UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDAL A. POPLIN, | : | **CIVIL NO. 3:07-CV-1083** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.

This case arises from a claim made by the plaintiff, Randal A. Poplin, who applied for disability insurance benefits, that he became disabled on May 20, 2004, the date on which he stopped working, as the result of degenerative disc

1

disease of the lumbosacral and cervical spines, myofascial pain and bilateral osteoarthritis of his knee joints.

The claim was denied initially and on reconsideration. The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on May 17, 2006. (Tr. 36-65).

At this hearing the plaintiff and a vocational witness testified.  The plaintiff stated that he worked as a welder. He stopped working in May, 2004.  He has substantial pain, and sees Dr. Porter, a pain management doctor, for trigger point injections in his back and scapula area.  He saw another doctor, Dr. Nazar, for pain injections in both knees.

His friend, Robin, helps him.  Her boys help him with household chores.  The heaviest thing he has lifted was a gallon of milk.

He can not reach overhead.  He can sit for about twenty minutes.  He can walk a block.

2

His medications are Morphine, Ativan, Lispernol, Imitrex, Toprol, Aspirin, Celebrex, Flexeril, Ambien, Lunesta, Amitriptyline, Percocet, Levitra, Cymbalta and Aciphex.  Side effects are: drowsiness, sweating, edginess, dry mouth, mood swings, loss of concentration and blurred vision.  He uses a TENS unit, heating pads, hot showers, ice packs and knee, skull and back injections.  He has insomnia.  He takes twelve to fourteen Percocet tablets a day.  He is developing arthritis in his hand and he can not manipulate small things.  He has occasional hand pain.  He develops soreness quickly when he is driving.  He has not tried any form of work since quitting welding in May of 2004.

A vocational witness stated that there are jobs that could be performed by someone with the plaintiff's vocational characteristics who has the functional capacity to perform light or sedentary work with certain limitations in reaching, pushing, pulling, climbing, stooping, balancing, sitting, standing, crouching, crawling, temperature, vibrations, lifting, and task completing such as described in the ALJ's hypothetical question.  If the person were to need more than

3

three breaks and lunch a day, he could not work at a job in the economy, the vocational witness stated.

On September 29, 2006, the ALJ issued her decision denying the plaintiff benefits.  (Tr. 20-30).  The Appeals Council denied the plaintiff's request for review (Tr. 9-12), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed his complaint with this court on June 14, 2007.  The defendant filed an answer to the complaint and a copy of the administrative record on August 27, 2007. Pursuant to Local Rules 83.40.4 and 83.40.5 and this court's Orders of October 11, 2007 and November 20, 2007 the plaintiff filed his brief on December 26, 2007 and the defendant filed his brief on January 23, 2008.  No reply brief has been filed.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

    To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707.  In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

    The Commissioner has promulgated regulations creating a five-step process to determine whether a claimant is disabled. The Commissioner must sequentially determine: (1) whether the

claimant is engaged in substantial gainful activity; (2)
whether the claimant has a severe impairment; (3) whether the
claimant's impairment meets or equals a listed impairment; (4)
whether the claimant's impairment prevents the claimant from
doing past relevant work; and, (5) whether the claimant's
impairment prevents the claimant from doing any other work.
*See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves a shifting of the
burden of proof.  The initial burden rests with the claimant to
demonstrate that he is unable to engage in his past relevant
work.  If the claimant satisfies this burden, then the
Commissioner must show that jobs exist in the national economy
that a person with the claimant's abilities, age, education,
and work experience can perform.  *Mason v. Shalala*, 994 F.2d
1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has
not engaged in substantial gainful activity since the alleged
onset date, that he has impairments that are severe
(degenerative disc disease of the lumbosacral and cervical

spines, myofascial pain and bilateral osteoarthritis of his knee joints), that his impairment alone or in combination do not meet or equal any listed impairments, and that he is not able to perform his past relevant work.  The ALJ further determined that it had been established by a preponderance of the evidence that the plaintiff has the residual functional capacity[1] to perform sedentary work.

On the basis of these findings, the ALJ found the plaintiff not to be disabled.

The plaintiff presents arguments that the ALJ erred in rejecting the opinions of two physicians, Doctors Porter and Nazar, with whom he had been treating his symptoms, and that she in turn erred in making her residual functional capacity finding for the plaintiff.

---

1.  "Residual Functional Capacity" is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Burnett v. Commissioner of Social Security Adm.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

The opinions of Doctors Porter (Tr. 299-302) and Nazar (Tr. 303) are in essence that, because of his pain, the plaintiff, their patient, can not perform substantial gainful activity.  The ALJ found the plaintiff to have severe impairments that could reasonably cause pain and found the plaintiff to have pain, but found the plaintiff's pain not to be so great as to warrant a finding that he can not perform substantial gainful activity.  Given that as stated above the ALJ must explain a decision, a review by the court naturally focuses upon the adequacy of the explanation.  One of the most well-established guide posts of the courts' review is that the ALJ must afford greater weight to the medical opinion of a treating physician than to a medical opinion of a non-treating medical expert unless there is some sound reason for not doing so.  *Rossi v. Califano,* 602 F.2d 55 (3d Cir. 1979); *Kane v. Heckler,* 776 F.2d 1130 (3d Cir. 1985); *Morales v. Apfel,* 225 F.3d 310 (3d Cir. 2000).  It is reversible error for the ALJ to reject the opinion of the treating physician unless she can point to substantial medical evidence stating an opposite view.  *Rossi,* 602 F.2d at 58; *Morales,* 225 F.3d at 317.

8

The defendant here calls upon the court to approve the decision of the ALJ to give greater weight to a physical therapist's 2001 report than to treating physicians' 2004 and 2006 reports.  The court should not approve the decision if it is not supported by a clear and satisfactory explanation.  In the absence of some satisfactory reason, in the consideration of a disability that is claimed to have begun in 2004, a 2001 report does not have the same relevance as reports from 2004 through 2006.  A non-treating physical therapist's report does not have the same relevance as two treating physicians' reports.  The defendant asserts, and the ALJ has found, that the treating physicians' opinions are unsupported by medical evidence.  The defendant asserts, and the ALJ has found, that neither Dr. Nazar nor Dr. Porter has documented any gait, range of motion, motor, strength, sensory, reflex or neurological deficits.  The ALJ found that the plaintiff has severe impairments that could reasonably cause the kind of pain that he experiences, and acknowledged that this case involves the question whether the plaintiff is disabled by pain.  Given that finding and that acknowledgment, it was not logical on the part of the ALJ to find that the absence of physicians' clinical

findings of functional deficits undermines the validity of the opinion of Dr. Nazar, an orthopedist, and Dr. Porter, an anesthesiologist and pain management specialist, that the plaintiff is disabled by pain.  This finding undermines the accepted rule that pain may be considered to be disabling if it is pain of a kind that could reasonably be caused by the objectively known impairment(s).  At the least, in the absence of a further inquiry in to the treating physicians' assumptions and definitions in their reporting about the patient's pain and its effects upon his ability to perform functions, the ALJ's findings are not adequately explained.

The ALJ, in rejecting the opinions of treating physicians' current opinions about their patient's residual functional capacity in favor of a non-physician's 2001 opinion on that subject, has stated that "medical evidence, diagnostic testing and related evidence have not appreciably changed since the time of evaluation."  (Tr. 27).  This is not correct.  The plaintiff continued to work for three years after that evaluation, and did not stop working until May of 2004.

10

Evidence of significant change in a person's performance of work-related functions is evidence of an appreciable change[2].

On June 7, 2004 the plaintiff had submitted a Disability Report and Work Activity Report to the Social Security Administration, Tr. 101-121, containing *inter alia* statements of the history of broken bones, surgeries, and medical conditions that he has undergone.  (Tr. 109, 121).

---

2.     The ALJ stated that she placed great weight on the 2001 "opinion" of Jim Copeland, a physical therapist.  (Tr. 27).  The Copeland report is in the record at Tr. 200-206.  The ALJ on the other hand rejected the opinion of Nicholas Fidanza, a social worker, that the plaintiff can not perform gainful employment, because Mr. Fidanza is not a physician, because Mr. Fidanza's report is "unsupported by the medical evidence of record . . . ." and because "the issue of disability is reserved to the commissioner." (Tr. 28).  Mr. Fidanza's report is in the record at Tr. 173-182.

The Copeland report was based upon an examination and testing.  The Fidenza report was based upon a records review, not an examination.

The Copeland report was based upon testing in 2001.  (Tr. 200).  The Fidenza report was based upon records through 2005.  The disability alleged onset date was May 20, 2004.  As with the matter of favoring a dated physical therapist's report over a more contemporary treating physician's report, the matter of favoring a dated examining physical therapist's report over a more contemporary non-examining social worker's report requires explanation.

We also note that the Copeland report documents a high degree of pain and significant limitations on the plaintiff's part.  However, there is not a clear indication of how the physical therapist evaluated the pain symptoms in stating in 2001 that the plaintiff could perform sedentary work.  The ALJ and the defendant have concerns that treating physicians have accepted uncritically statements of the plaintiff about his pain.  How an evaluator of residual functional capacity has factored subjective pain symptoms in to a residual functional capacity report is always an issue.

The plaintiff has consistently pursued a course of doctors' visits, examinations and treatments for his pain conditions and his other diseases and symptoms.  The ALJ's finding that the medical evidence "is devoid of any evidence relating to range of motion, gait, motor, sensory, power, reflex or neurological deficits as a result of these conditions" (Tr. 27) is an unsupported statement.  Even the 2001 report of Mr. Copeland, the physical therapist, to which the ALJ gave great weight, describes significant deficits and signs in these areas.  The reports of Dr. Porter and Dr. Nazar refer to deficits experienced by the plaintiff due to his orthopedic injuries, arthritis and pain.  The finding of no deficits is not explained and appears to be an error.  Again, moreover, it is not necessary for a claimant to prove that pain that is reasonably of a kind that would be caused by the objectively known impairment(s) has resulted in objectively diagnosed deficits.

Pain may be the basis for a disability finding.  The ALJ has in essence applied a requirement that a claimant prove not only a condition that could reasonably produce pain, but

also that the pain has resulted in a loss of physical
functioning: "Unfortunately, the undersigned does not believe
the claimant when he says he is incapacitated due to his
conditions or the pain.  The evidence of record does not
contain objective evidence of such a loss of function." (Tr.
27).  However, the statute provides that pain may be disabling,
42 U.S.C. § 423(d)(5)(A), and a plaintiff is not required to
prove a direct cause-and-effect relationship between a physical
impairment and the plaintiff's pain. Baerga v. Richardson, 500
F.2d 309 (3d Cir. 1974), cert denied, 420 U.S. 931.  It must be
borne in mind, as well, that the ALJ found an inability to
perform past relevant work and that the burden was therefore on
the Commissioner to prove an ability to perform other work, not
on the plaintiff to prove an inability to perform all work.  As
the plaintiff argues in his brief, the hypothetical person
described to the vocational witness, which person is said by
the vocational witness to be able to perform identified jobs,
must be found by the ALJ to have the same functional capacities
as the plaintiff has.  The ALJ must have found on the basis of
substantial evidence that, despite his pain, the plaintiff can
perform the light and sedentary jobs described by the

13

vocational witness; that is that he could perform to a reasonable employer's satisfaction the job requirements of a video surveillance monitor, of a ticket taker, of an inspector, or of an assembler.  (Tr. 61-63).  The ALJ must have found on the basis of substantial evidence that the plaintiff as a worker in one of these jobs would not need to take any unscheduled breaks to recline or to lie down and would not require more than three absences a month.  (Tr. 63).  The vocational witness testified that the plaintiff, accepting *arguendo* the plaintiff's own sense of himself, is a person who could not perform these jobs.  But the ALJ has rejected the plaintiff's own sense of himself as a worker, and has not accepted the plaintiff's credibility.

A careful analysis of the reasons given by the ALJ for a rejection of the credibility of the plaintiff is necessary, since this aspect of the adjudication is outcome determinative.

The ALJ has justified a rejection of the credibility of the plaintiff about his subjective symptoms as follows (Tr. 27-28):

14

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible, because it is inconsistent with, and not supported by, the great weight of the documentary medical evidence. It is clear that claimant has degenerative disc disease, has shoulder problems and has arthritis in his knees, it is also clear that the medical evidence is devoid of any evidence relating to range of motion, gait, motor, sensory, power, reflex or neurological deficits as a result of these conditions. It is also clear that claimant has an exaggerated reaction to pain. The records are replete with claimant's consistent subjective complaints of pain everywhere. Unfortunately, the undersigned does not believe the claimant when he says he is incapacitated due to his conditions or the pain. The evidence of record does not contain objective evidence of such a loss of function.

In this case, the claimant's case in establishing disability is directly dependent on the element of pain which is of an intractable nature. Pain is subjective and difficult to evaluate, both quantitatively or qualitatively. Nevertheless, most organic diseases produce manifestations other than pain and it is possible to evaluate the underlying processes and degree of resultant impairment by considering all of the symptoms. Generally, when an individual has suffered pain over an extended period, there will be observable signs such as a significant loss of weight, an altered gait or limitation of motion, local morbid changes, or poor coloring or station. In the present case, the claimant has complained of pain over an extended period of time. None of

> the above signs of chronic pain are evident.
> While not conclusory itself, this factor
> contributes to the determination that the
> claimant is not disabled as a result of pain.

An ALJ may not substitute her personal judgment for medical evidence. *Aquino v. Harris,* 516 F. Supp. 265, 272 (E.D. Pa. 1981). An ALJ must accept a claimant's testimony of disabling pain at face value, unless it is contradicted by the record. *Garland v. Secretary of Health and Human Services,* 528 F. Supp. 415 (E.D. Mich. 1981). These fundamental principles are based upon the expectation that adjudications will be based upon **evidence**. Adjudicators must decide cases based on **evidence** and not upon their own subjective generalizations about human behavior. A commitment to evidence-based adjudications requires a skeptical scrutiny of any unsupported assertions of opinions or generalizations of the adjudicator. The Federal Rules of Evidence do not apply in social security disability benefits administrative proceedings and, therefore, Rule 702 of the Federal Rules of Evidence does not apply[3]. But the court is in any event called upon to determine whether the

---

3. *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), is not directly applicable, in that it is a decision based upon the Rules of Evidence.

administrative decision is supported by **evidence**.  Opinions and generalizations of the adjudicator are not evidence, with or without reference to a body of adopted evidentiary rules.  Such opinions often do not bear up under the microscope of rational analysis.  As a matter of logical reasoning about the relationship between personal observations and inferences, there must be a valid and rational method giving rise to and supporting the inference.  In the context of the court's duty to review a set of factual inferences to assure that they are supported by evidence, the court must determine whether the ALJ's generalizations about what a fact finder can know in looking at a claimant, on a single occasion, for about a half of an hour, about what the claimant is or is not experiencing in the way of pain sensations, are to be accepted as based upon evidence.  The ALJ states that a fact finder knows on the basis of such a single observation whether the person she is observing has been experiencing pain over an extended period of time.  Upon analysis, this statement can not meet a standard of having a rational and logical basis.

The ALJ's generalizations about the relationship between a person's appearance and the degree of pain the person is experiencing are probably not inconsistent with ideas that are generally believed by most persons.  At least, that would be the generalization of the undersigned, who would share the ALJ's generalized beliefs in many contexts.  Most of us, most of the time, believe that the natural state of existence is not to be in pain and that where there is pain there is a knowable explanation and there are predictable and articulable manifestations.  However, scientific methodology can often be found to undermine beliefs and opinions that we may consider to be self-evident.  And, an adjudication must be based upon evidence, and in this context the issue of credibility does not involve a witness' testimony about witnessed events but rather involves a witness' testimony about how he feels.

There are reasons to doubt the reliability of the generalizations as stated and applied by the ALJ.  First, we have seen the same generalization stated and used by ALJs in separate social security disability adjudications. Its

repetition does not render it invalid necessarily, but may warrant a close scrutiny of its merits.

The absence of any significant articulation of the analysis linking the generalization language to the observations of the plaintiff by the ALJ in this particular case leads to a reasonable inference that there has not been a studied analysis made of the applicability of the generalizations to this particular case.  The absence of an explained application of the generalizations to the particular case in turn casts doubt upon the validity and upon the utility of the generalizations.

Second, the method that is involved in the application of the generalizations to a particular case is questionable on several bases.  Most notably, when a person has been observed only once, how is it that the generalization about changes (in weight, gait, motion, morbidity, coloring or station) over time ("an extended period") can be logically applied?  The very nature of the generalization, since it involves changes over time, obviously requires that the person has been observed on

at least two occasions.  In the same vein, where a person's coloration is unknown but for the one-time observation, what is the basis for a reliable finding that the coloration is not unnatural and does not denote pain?

Third, why is it that complaints of pain over an extended period of time is not itself considered as an indicator of pain; i.e., is not even a factor in the generalization?  Here, the ALJ may be seen to have used the fact of complaints over an extended period of time as a factor, but as a mitigating factor: for the ALJ, if there are complaints over time, but not observable "changes", there is not serious pain.

Fourth, why is the use of prescribed pain medications over an extended period of time not a factor indicative of pain?  This was not factored in to the ALJ's generalization.

Fifth, why does the ALJ use the generalization of "most organic diseases" instead of focusing upon the plaintiff's known and claimed impairments?  Are the generalizations stated

20

applicable in relationship to the known and claimed impairments of the plaintiff[4]?

The decision to deny the claim of the plaintiff was based upon a decision that the plaintiff was not credible.  The decision of the Commissioner in not adequately explained, as required by *Cotter, supra*.  The rejection of the treating physicians' opinions is not adequately explained.  The reasons for rejecting the plaintiff's assessment of his own limitations and pain is not adequately explained.  It is accordingly recommended that the case be remanded to the Commissioner for additional consideration and, if appropriate, the development of an additional record.

**/s/ J. Andrew Smyser**
J. Andrew Smyser
Magistrate Judge

Dated:  February 25, 2008.

_____

4.  The impairments here are principally orthopedic impairments, post-traumatic arthritic pain, as we understand it.